UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALICE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 4:17-CV-01531-JAR |
| SONNY PERDUE, Secretary, | ) |
| Department of Agriculture, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

This matter is before the Court on Defendant Sonny Perdue's Motion to Dismiss or, in the Alternative, for Summary Judgment. (Doc. No. 43). The motion is fully briefed and ready for disposition. Plaintiff Alice Williams brings this employment action pro se, claiming discrimination on the basis of race under Title VII, 28 U.S.C. § 2000e *et seq.*, and age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*,[1] retaliation, hostile work environment, and violations of 42 U.S.C. § 1981. For the reasons set forth below, Defendant's motion to dismiss will be granted in part, and the motion for summary judgment will be granted in part.

**I.     Background[2]**

Plaintiff, an African American female, began her employment with Defendant as an accounting technician in 1997. Since 2007, Plaintiff has been unsuccessful in her numerous

---

[1]     Although Plaintiff does not expressly cite to the ADEA, the Court has liberally construed her claims of age discrimination as being brought under that statute.

[2]     The facts are taken from Defendant's Statement of Uncontroverted Material Facts, Doc. No. 40; Plaintiff's Statement of Controverted Material Facts, Doc. No. 48; and the parties' responses thereto.

applications for various positions within the United States Department of Agriculture ("USDA"), which resulted in Plaintiff filing two complaints with the Equal Employment Opportunity Commission—one in 2009 alleging unfair discipline and one in 2013 alleging discrimination when Defendant did not hire her for an accountant position.[3]

In 2015, Plaintiff applied for a Pathways Accountant position at the GS-07/08 grade level, advertised under Vacancy Announcement No. STL-HR-2015-0829 ("the Pathways vacancy"). At that time, there were fifteen accountant position openings, which could be filled through either the Pathways vacancy announcement at issue or a non-Pathways vacancy announcement at the higher GS-11/12 levels.[4] Selecting officials interviewed Pathways and non-Pathways candidates using joint interviews.

The Pathways vacancy listed minimal qualifications including an accounting degree or a degree in a related field, such as business administration, finance, or public administration, that included or was supplemented by 24 semester hours in accounting. The 24 hours could include up to six hours of credit in business law.

Plaintiff was chosen for an interview by six of the eight selecting officials, but she was ultimately not selected for any of the Pathways accountant positions. The characteristics and qualifications of the six successful Pathways applicants ("Pathways selectees") are as follows:

> Selectee No. 1: Caucasian female under the age of 40; holds a Master's Degree in Accounting; superior prior experience with Excel spreadsheets; demonstrated experience leading a project.

---

[3] The record is inconsistent in referring to this EEOC complaint as having been filed in 2012 or 2013. The Court will refer to this complaint the "2013 complaint."

[4] Plaintiff does not dispute that she did not qualify for the non-Pathways vacancy, and those vacancies are not at issue.

Selectee No. 2: African American female under the age of 40; holds a Master's Degree in Accountancy.[5]

Selectee No. 3: African American female under the age of 40; in her final semester of a dual degree program (3.699 GPA) for Bachelor in Science Degrees in Accounting Systems & Forensics and Accounting, during which time she received many academic awards; less than two months away from earning her CPA and Information Systems Auditor certifications.

Selectee No. 4: African American female under the age of 40; preferred status veteran; prior experience with cash reconciliation and excel; exhibited excellent communication and customer service skills; within one month of obtaining her Master's degree in Accountancy (3.75 GPA); prior training in automated accounting.

Selectee No. 5: African American female over the age of 40; Associates Degree in Accounting (3.5 GPA) and a Bachelor's Degree (3.5 GPA); prior experience with cash disbursements (relevant to the position for which she was selected); interviewed well.

Selectee No. 6: Asian American female under the age of 40 with a Bachelor's Degree in Accounting and pursuing an MBA; experience with IRS reporting and W-9 processing (relevant to the position for which she was selected).

In sum, all six Pathways selectees were women, had earned—or would soon earn—accounting degrees, and had prior experience that the selecting officials found more appropriate for their needs. Four of the Pathways selectees were African American; one was over the age of forty; and one was a preferred-status veteran.

Each selecting official highlighted certain qualifications that separated his or her selected candidate from the other applicants, including more experience with Excel, prior experience leading projects, superior communication skills, prior specific experience with cash reconciliation, superior interview skills, specific experience in cash disbursements, and prior experience with IRS reporting and W-9 processing.

---

[5] Selectee No. 2 was selected by a selecting officer who did not interview Plaintiff.

Plaintiff holds an MBA (3.22 GPA) with 25 hours in accounting or business law coursework, which qualified her to apply for the Pathways vacancy. Plaintiff received a D in elementary accounting I at Southeast Missouri State University, and A's in two courses in computer accounting applications from St. Louis Community College. After interviewing Plaintiff, the selecting officials noted that Plaintiff's experience as an accounting technician was more closely related to customer service rather than accounting, and at least one selecting official identified errors within Plaintiff's resume. Further, several selecting officials noted the value they placed on written and oral communication skills. Defendant presented evidence that none of the selecting officials were aware of Plaintiff's prior EEOC complaints.

On June 18, 2015, Plaintiff learned that she was not selected for the Pathways vacancy. She was 54 years old at the time of non-selection. Plaintiff filed a complaint with the EEOC. The EEOC investigated the allegations and, on February 10, 2017, determined that the weight of the evidence indicated that discrimination did not occur. Plaintiff then filed this lawsuit on May 15, 2017.

In her second amended complaint, Plaintiff alleges that she was not selected for the Pathways vacancy on the basis of her race and age (Count I). Plaintiff asserts that she met the published qualifications necessary for the position and performed her duties "to the legitimate expectations of her employer," but was nevertheless not selected for the position. (Am. Compl. at ¶¶ 12-13). She claims that the Pathways selectees were white, did not have the requisite degree, were not over the age of 50, and failed to meet the published requirements. She challenges the selecting officials' statements that her resume contained typographical errors and contends that the reasons given for her non-selection were "beyond the posted requirements of

the job." (*Id*. at ¶ 18d.).  Therefore, Plaintiff alleges that there was a clear inference that a prohibited factor played a role in her non-selection.

Plaintiff also alleges that she was not selected for promotion in retaliation for past complaints to management and for filing EEOC complaints.  She claims that her employer "papered" her personnel file by "placing unfounded and false records in [her] permanent employment record," which then had an adverse effect on her promotion opportunities and professional reputation.  (Second Am. Compl. at ¶ 18c).  Thus, Plaintiff brings claims for retaliation, reprisal, and hostile work environment in Count II.  Lastly, Plaintiff brings a claim under 28 U.S.C. § 1981 for racial discrimination, retaliation, and hostile work environment in Count III.

On September 14, 2018, Defendant moved to dismiss or, in the alternative, for summary judgment on numerous grounds.  Defendant first argues that discrimination claims stemming from any other instances of non-selection (and related EEOC complaints) should be dismissed for failure to exhaust administrative remedies.  Defendant contends the only matter properly before the Court is the Pathways vacancy.  In the alternative, Defendant argues that any allegations pertaining to old EEOC cases are barred by the doctrine of *res judicata*.

Defendant next argues that Plaintiff's allegations of race discrimination fail because Defendant articulated legitimate, non-discriminatory reasons for its employment decisions, and Plaintiff failed to show pretext for discrimination.  Defendant also maintains that Plaintiff's discrimination claim fails because the Pathways selectees were not similarly situated in terms of skills, experience, and education, and some of those selectees were part of Plaintiff's protected group (African American).

With regard to Plaintiff's age discrimination claim, Defendant argues that he articulated a legitimate non-discriminatory reason for hiring the Pathways selectees, and Plaintiff failed to establish pretext by showing that her age was the "but for" cause of her non-selection. Defendant also maintains that Plaintiff's retaliation claim fails for failure to establish that her prior EEOC complaints were causally connected to her non-selection.

Defendant further argues that Plaintiff's hostile work environment claim should be dismissed because the second amended complaint contains no factual allegations to support such a claim. Defendant also moves to dismiss Plaintiff's § 1981 claim because federal employees may not sue for employment discrimination under that statute. Lastly, Defendant moves to strike Plaintiff's demand for a jury trial for her allegations of age discrimination and prayers for punitive damages or exemplary relief because, as a federal employee, Plaintiff is not entitled to punitive damages from the government or a trial by jury for claims brought under the ADEA.

In her opposition, Plaintiff responds that she presented sufficient evidence to establish that the reasons given for her non-selection were pretext for discrimination, citing her MBA and positive work performance evaluations as support. She further argues that the Pathways selectees were white, did not possess the requisite degrees, and/or did not possess the specialized coursework in accounting. Plaintiff maintains that her non-selection was based on subjective criteria and improper factors of race and age. Further, she argues that none of the Pathways selectees were over the age of 50.

As to her reprisal, retaliation, and hostile work environment claims, Plaintiff maintains that after she complained about discrimination to management in June 2014 and then to the EEOC in June 2015, she was not selected for two promotions in June and August 2015. The timing of these events, Plaintiff argues, is sufficiently close in time to establish causation.

Defendant replies that Plaintiff's opposition consists of unsubstantiated allegations, and that any hiring decisions made prior to the non-selection at issue are not within the scope of this litigation. Defendant also points out several alleged inaccuracies contained in Plaintiff's opposition, including the racial composition of the six candidates selected for the Pathways vacancy and their qualifications. In short, Defendant argues that Plaintiff's opposition consisted only of speculation, personal opinion, and legal conclusions, which were insufficient to defeat dismissal and/or summary judgment in favor of Defendant.

## II. Standard of Review

### A. Motion to Dismiss

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.* at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679). Within this context, a complaint filed pro se must also be liberally construed. *Topchian v. J.P. Morgan Chase Bank, N.A.,* 760 F.3d 843, 849 (8th Cir. 2014).

B. Summary Judgment

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lynn v. Deaconess Medical Center*, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving party may not rest on her pleadings but must produce sufficient evidence to support the existence of the essential elements of her case on which she bears the burden of proof. *Id.* at 324. In resisting a properly supported motion for summary judgment, the plaintiff has an affirmative burden to designate specific facts creating a triable controversy. *Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1113 (8th Cir. 2004).

C. *McDonnell Douglas* Framework

Direct evidence of employment discrimination is rare, therefore, most cases rely on circumstantial evidence. In the absence of direct evidence of discrimination, courts employ the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (Title VII case).

Under the burden-shifting analysis, the plaintiff must first establish a prima facie case of intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802; *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir. 1994). If the plaintiff establishes a prima facie case, a presumption of discrimination is established and the burden of production shifts to the defendant to articulate a

legitimate, non-discriminatory reason for the adverse employment action. 411 U.S. at 802. The defendant need not persuade the court that the articulated reason was the basis of the employer's action; rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509 (1993).

Upon the proffer of such evidence, the presumption of discrimination established by the prima facie case "simply drops out of the picture." *Id.* at 510-11. The burden then shifts back to the plaintiff to prove that the reason articulated by the employer was really a pretext for discrimination. *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1316 (8th Cir. 1995). A rejection of the employer's proffered non-discriminatory reason by itself or combined with elements of the prima facie case may be enough to establish, but does not compel, an inference of intentional discrimination. *St. Mary's Honor Center*, 509 U.S. at 511.

The burden of proving discrimination remains on the plaintiff at all times. *Id.* at 515-16. It is not enough to merely discredit defendant's articulated reason for the adverse employment action. A plaintiff must always establish that the real reason for defendant's action was impermissible discrimination. *Id.*; *see also Huston v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995).

To avoid summary judgment, a plaintiff must present evidence that, when viewed in its entirety: (1) creates a fact issue as to whether the employer's proffered reason is pretextual, and (2) creates a reasonable inference that a discriminatory motive was a determinative factor in the adverse employment decision. *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996).

## III. Discussion

### a. Failure to Exhaust Administrative Remedies

Title VII prohibits discrimination in employment based on race. 42 U.S.C. § 2000e–2(a). However, Title VII establishes an administrative procedure which a complaining employee must follow before filing a lawsuit in federal court. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47 (1974). Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts. *Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81 (1989).

Here, Plaintiff's EEOC complaint specifically arose out of her non-selection for the Pathways vacancy. In her second amended complaint, Plaintiff references a myriad of grievances, such as differential discipline and "papering" Plaintiff's personnel file, during her employment. She also brings a hostile work environment claim.

However, Plaintiff affirmatively stated in her EEOC deposition that she was bringing a claim only for her non-selection for the Pathways vacancy. (Doc. No. 40-4, Tr. at 177). Therefore, only claims related to that instance of non-selection were exhausted at the administrative level. To the extent Plaintiff brings claims based on other instances of discrimination, those claims will be dismissed for failure to exhaust administrative remedies.

Further, Plaintiff did not include her hostile work environment allegations in her EEOC complaint. Therefore, those claims will also be dismissed for failure to exhaust administrative remedies.

### b. Race Discrimination

To survive Defendant's motion for summary judgment on her race discrimination claims, Plaintiff must either present direct evidence of discrimination, or satisfy the *McDonnell Douglas* burden-shifting scheme. *Gordon v. Shafer Contracting Co.*, 469 F.3d 1191, 1196 (8th Cir. 2006) (explaining that "the *McDonnell Douglas* burden-shifting framework governs claims of race discrimination under Title VII and Section 1981"). Because Plaintiff has not offered any direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework governs.

To establish a prima facie case of discrimination in a hiring context, Plaintiff must show

> (1) she is in a protected class; (2) she was qualified for an open position; (3) she was denied that position; and (4) the [employer] filled the position with a person not in the same protected class.

*Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011). Here, Plaintiff asserts that the individuals selected for the Pathways vacancy were "mostly non minority/white." (Second Am. Compl. at 7). However, Defendant presented evidence that more than half of the selectees were African American. Thus, as to those selectees, Plaintiff fails to establish a prima facie case of discrimination.

Assuming, however, that Plaintiff established a prima facie case with regard to the two selectees who were not African American, the burden shifts to Defendant to "articulate a legitimate, nondiscriminatory reason for not hiring" her. *Dixon v. Pulaski County Special Sch. Dist.,* 578 F.3d 862, 868 (8th Cir. 2009).

Defendant offered affidavits of each of the selecting officials explaining their hiring decisions to prove that there were legitimate, nondiscriminatory reasons for Plaintiff's non-selection. Here, one of the two selectees held a master's degree in accounting and demonstrated experience leading a project, which was directly relevant to the position. The other selectee held

11

a Bachelor's Degree in Accounting and had specific experience with IRS reporting and W-9 processing. Defendant argues that while the Pathways vacancy announcement set forth baseline criteria for education and experience, these were only minimal qualifications, which the selectees exceeded. The selectees held degrees in accounting and possessed specific experience relevant to the positions for which they were selected.

Plaintiff, on the other hand, does not have a degree in accounting, but has completed several accounting courses. The selecting officials were concerned that Plaintiff's prior experience was more related to customer service, and some officials identified errors in Plaintiff's resume. In light of these legitimate, non-discriminatory reasons for Plaintiff's non-selection, the Court's analysis turns to whether Plaintiff presented sufficient evidence to create a genuine dispute of material fact that Defendant's proffered reason was mere pretext for discrimination. *Amini v. City of Minneapolis*, 643 F.3d 1068, 1075 (8th Cir. 2011).

"A plaintiff may show that the employer's explanation is 'unworthy of credence . . . because it has no basis in fact.'" *Torgerson,* 643 F.3d at 1047–48 (citation omitted). "Alternatively, a plaintiff may show pretext 'by persuading the court that a [prohibited] reason more likely motivated the employer.'" *Id.*

Here, Plaintiff repeatedly asserts that she met the listed qualifications for the job and was not selected, whereas the Pathways selectees did not have the listed qualifications (specifically, specialized coursework in accounting). However, Defendant presented evidence that all of the selectees held degrees in accounting or accountancy, or were close to completing such a degree. Further, Plaintiff does not challenge the fact that some of the Pathways selectees possessed specific experience relevant to the position. Thus, Plaintiff has failed to show that Defendant's

explanation for non-selection has no basis in fact, nor has Plaintiff demonstrated that a prohibited, race-based reason motivated Defendant's hiring decisions.

Lastly, Plaintiff argues that the selecting officials used improper subjective considerations, such as errors in her resume, in failing to hire Plaintiff. While courts are "cautioned against the use of subjective considerations because they are easily fabricated," *Chambers v. Metro. Prop. and Cas. Ins. Co.,* 351 F.3d 848, 858 (8th Cir. 2003), "the mere use of subjectivity in the hiring process is not itself discriminatory." *Amini*, 643 F.3d 1068, 1076–77 (8th Cir. 2011). Errors in a resume would give rise to legitimate concerns regarding any candidate applying for a job. This, by itself, is not so subjective as to render a non-selection impermissible. Moreover, the objective qualifications of the candidates were comparable, so such small errors may impact the employer's hiring decisions. Accordingly, "the use of this subjective consideration in this case does not give rise to an inference of discrimination." *Chambers*, 351 F.3d at 858 (8th Cir. 2003).

Moreover, the record reflects that the Pathways candidates were at least equally qualified, and more than half of the Pathways selectees were African-American. Thus, there is a strong inference against racial bias by the selecting officers. An employer "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981). In light of the particular circumstances presented in this case, Defendant properly exercised his discretion here. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's Title VII claims of race discrimination.

### c. Age Discrimination

"The ADEA prohibits a covered employer from failing or refusing to hire an individual who is at least forty years old because of the individual's age." *Christensen v. Titan Distribution, Inc.*, 481 F.3d 1085, 1095 (8th Cir. 2007) (citing 29 U.S.C. §§ 623(a)(1), 631(a)). In a failure-to-hire case, the prima facie case of age discrimination consists of four elements: "(1) the plaintiff was in the protected age group (over 40), (2) the plaintiff was otherwise qualified for the position, (3) the plaintiff was not hired, and (4) the employer hired a younger person to fill the position." *Id.* (citations omitted).

Plaintiff has met her burden. At all relevant times, Plaintiff was over the age of 50 and, by Defendant's own admission, met the basic qualifications for the Pathways vacancy. She was not hired, and five of the six Pathways selectees were under the age of 40. None were over the age of 50. Thus, the burden shifts to Defendant to produce evidence of a legitimate, nondiscriminatory reason for not hiring plaintiff. *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1079 (8th Cir. 2008).

Where, as here, an employer "contends that the selected candidate[s] [were] more qualified . . . than the plaintiff, a comparative analysis of the qualifications is relevant to determine whether there is reason to disbelieve the employer's proffered reason for its employment decision." *Chambers,* 351 F.3d at 857 (alteration in original) (internal quotations omitted). If the comparison "reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate," then no inference of age discrimination would arise. *Id.* (internal quotations omitted). Conversely, if the "comparison successfully challenges the employer's articulated reason for the employment decision, it might serve to support a reasonable inference of discrimination." *Id.*

As previously discussed, Plaintiff was, at best, similarly qualified as the Pathways selectees, and Defendant offered evidence of legitimate, nondiscriminatory reasons for hiring other candidates over Plaintiff. Plaintiff has failed to demonstrate that the reasons given were merely pretext for age discrimination. Thus summary judgment will be granted in favor of Defendant on Plaintiff's ADEA claims.

### d. Retaliation/Reprisal

The *McDonnell Douglas* burden-shifting doctrine also governs Plaintiff's reprisal claims. In order to establish a claim of retaliation, Plaintiff must show: "(1) she engaged in protected activity; (2) a reasonable person would have found the challenged action materially adverse and (3) the materially adverse action was causally linked to the protected conduct." *Carrington v. City of Des Moines*, 481 F.3d 1046, 1050 (8th Cir. 2007). The burden to show a prima facie case is not difficult, but the plaintiff must show that her protected activity was the but-for cause of the allegedly adverse action by the employer. *Musolf v. J.C. Penny Company, Inc.*, 773 F. 3d 916, 919 (8th Cir. 2014) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).

In her complaint, Plaintiff alleges she "was unlawfully overlooked for multiple positions of promotion" and that Defendant "engaged in conduct designed with the specific purpose to retaliate against Plaintiff for her many complaints." (Second Am. Compl. at 5). Assuming— without deciding—that Plaintiff's complaints to management constituted protected conduct,[6] Plaintiff failed to present any evidence that her complaints resulted in her non-selection, whereas Defendant offered evidence that none of the selecting officials were aware of Plaintiff's prior EEOC activities. *Rogers v. Frank*, 782 F. Supp. 91, 93 (E.D. Mo.), aff'd, 972 F.2d 354 (8th Cir.

---

[6] The Court notes that in her deposition, Plaintiff stated that she only intended to pursue claims of retaliation based on her EEOC activity. (Doc. No. 40-4 at 178).

1992) (no inference of retaliation because hiring officials did not know about the activity allegedly instigating the reprisal).

Further, Plaintiff filed EEOC complaints in 2009 and 2013. She was notified that she would not be hired for the Pathways vacancy in June 2015. This large gap in time is not sufficient to establish a causal link between the non-selection and the filing of the EEOC complaint. *See Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005) (holding that a one-year gap between filing an EEOC complaint and discharge was insufficient and weakened the showing of a causal link); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing cases in which a three-month period and a four-month period, respectively, were insufficient to establish a causal link); *Dhyne v. Meiners Thriftway, Inc.*, 184 F.3d 983, 989 (8th Cir. 1999) (stating that a four-month gap, standing alone, weakened the showing of a causal link in a retaliation claim).

Lastly, Plaintiff argues that she complained about discrimination to management in June 2014 and was subsequently passed over for the Pathways vacancy. However, there is nothing in the record to support her assertion. Even if such evidence were before the Court, Plaintiff's non-selection occurred one year after her complaints to management. Without more, this is insufficient to establish a causal link. *See Wallace*, 415 F.3d at 859. Accordingly, the Court will grant summary judgment in favor of Defendant on Plaintiff's retaliation and reprisal claims.

   e. **28 U.S.C. § 1981**

Unlike a private employee, a federal employee may not maintain a claim under § 1981 against the United States based on a claim of intentional discrimination in employment. *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 829 (1976); *Walton v. U.S. Dep't of Agric.*, No. 4:02CV00163 AGF, 2007 WL 1246845, at *11 (E.D. Mo. Apr. 30, 2007). As a federal

employee, Plaintiff's only remedy for employment discrimination is under the administrative and judicial scheme of Title VII. *Id.* Thus, Plaintiff's § 1981 claim will be dismissed.

**IV.     Conclusion**

Defendant filed a motion to dismiss or, in the alternative, a motion for summary judgment. The Court will grant the motion to dismiss with regard to Plaintiff's hostile work environment claim and claims based on other instances of discrimination because she failed to exhaust her administrative remedies. Further, the Court will grant the motion to dismiss with regard to Plaintiff's § 1981 claim. After review of the record, the Court will grant summary judgment in favor of Defendant on Plaintiff's remaining claims of race and age discrimination, retaliation, and reprisal.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Sonny Perdue's motion to dismiss or, in the alternative, motion for summary judgment is **GRANTED**, as set forth in this Order.

A separate Judgment will accompany this Memorandum and Order.


Dated this 10th day of December, 2018.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE